The Honorable Donald Ray State Representative 315 Remmel Newport, Arkansas 72112
Dear Representative Ray:
This letter is a response to your request for an opinion regarding the procedures that are required in order to request a constitutional convention for the purpose of amending the United States Constitution. You have presented the following questions:
 (1) What procedure(s) would the Arkansas General Assembly be required to follow in order to participate in the convening of a constitutional convention initiated by the states?
 (2) To whom would a request for the convening of a convention be addressed and in what form should such a request be made?
(3) What type of delegate selection process would be required?
 (4) Would it be possible to limit the scope of issues considered by a constitutional convention initiated by the states and the time frame for action by such a convention?
RESPONSE
General
The questions that you have presented are governed generally by Article V
of the United States Constitution, which states in pertinent part:
Mode of Amendment.
 The congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the congress. . . .
U.S. Const., art. V.
Under the provisions of Article V, amendments to the U.S. Constitution can be proposed in two ways: (1) By two-thirds of both houses of Congress; or (2) By a convention called by the Congress at the request of two thirds of the state legislatures.
You have inquired about the second method, the convention method. It has never been used in United States history to propose an amendment to the U.S. Constitution, although every state has at one time or another (some on numerous occasions) requested a constitutional convention. (More than four hundred such requests have been presented.)
Because the convention method has not been used, there is virtually no final legal authority on the issues that you have raised. However, numerous scholars have addressed these issues.[1] Although their views do not constitute binding legal authority, they do provide guidance, in the absence of such authority, on the issues that you have raised. I will therefore address your questions using those scholars' views as a basis for response.[2]
Question 1 — What procedure(s) would the Arkansas General Assembly berequired to follow in order to participate in the convening of aconstitutional convention initiated by the states?
I interpret Question 1 to be asking what procedure the General Assembly must follow in order to participate in initiating the process of requesting a constitutional convention. Issues surrounding other steps in the convention process are raised in subsequent questions.
Article V does not provide any detail for the procedures to be followed by the state legislatures in requesting a constitutional convention. The article is clear in its requirement that the request for a constitutional convention be made by the state legislature; however, it does not specify the form that the request must take. Presumably, any valid act (i.e., valid under state law) of the state legislature will suffice to communicate the legislature's desire to request a constitutional convention. Such an act usually takes the form of a joint resolution by the legislature.[3] It has been suggested that requests should be verified, or should include some sort of certification that the resolution received by Congress is the same resolution that was passed by both houses of the state legislature.[4]
It should be noted that the task of determining the sufficiency of requests for constitutional conventions will most likely fall to Congress.[5] Because Congress has not formulated procedural or substantive guidelines for the drafting and filing of convention requests, and because it has never been faced with the actual task of determining the sufficiency of requests, the question of whether the format and substance of any given request will meet with Congress' approval remains uncertain.
Question 2 — To whom would a request for the convening of a convention beaddressed and in what form should such a request be made?
To Whom The Request Should Be Addressed
Article V is clear that the request by the state legislature for a constitutional convention must be made to the U.S. Congress, but it does not specify a particular officer to whom the request must be addressed. Currently, such requests that are recorded in the congressional record are indexed under "Speaker of the House" and "Vice President." It may therefore be concluded that it is appropriate to address convention requests to the individuals holding those offices. Once received, requests are in turn transmitted to a variety of congressional officers.[6]
Form of the Request
The language of Article V unambiguously requires that, at a minimum, the request from the state legislature must communicate the legislature's desire that the Congress call a constitutional convention for the purpose of proposing amendments to the U.S. Constitution. Beyond that minimum, the language of Article V is not helpful.
In addition to the form-related matters discussed in response to Question 1, a frequently discussed form question is whether a convention request should include the text of a proposed amendment. There is disagreement among scholars about this issue.[7] Because of this disagreement, it would be advisable to include such text in the request. However, if the text of a proposed amendment is included in the request, the request should also specify whether the state wishes the request to suffice, if necessary, as a request for a convention that would have a broader subject matter. That is, the request should state whether it should be counted among requests asking for a convention that would consider matters other than the proposed amendment contained therein.[8] A statement of this nature is relevant to the issue of limited conventions, discussed in response to Question 4.
Question 3 — What type of delegate selection process would be required?
It is generally accepted among commentators on this issue that the U.S. Congress has authority, under Article V, to determine the "housekeeping" features of a constitutional convention called at the behest of the states, these features being such matters as the time and place of the convention, and the total number, apportionment, and qualifications of the delegates.[9] The method of selection, however, is a matter to be decided by each state. It may be concluded, then, that the Arkansas General Assembly would have the discretion to establish a process for the selection of delegates to the convention. It should be noted that the constitutional guarantees pertaining to congressional elections will likely apply to the election of delegates to the constitutional convention.[10] The ABA study, cited previously, concluded that the one-person, one-vote rule should apply to such elections.[11]
Question 4 — Would it be possible to limit the scope of issues consideredby a constitutional convention initiated by the states and the time framefor action by such a convention?
Scholars are sharply divided on the question of whether the states can limit the agenda of a constitutional convention called under the authority of Article V.[12] Those who hold the position that the states may not limit the scope of the convention appear to outnumber slightly those who hold the opposite view.[13] The danger of a convention of unlimited scope is that it would give rise to the possibility of changing the entire constitution, rather than simply considering a particular amendment. For this reason, the state legislatures should carefully consider whether they are willing to risk broad changes to the constitution for the sake of obtaining the limited change that they are seeking, in the event that they are unable to limit the convention's scope.[14]
It would appear from a review of the arguments presented by the divergent schools of thought on this issue that if the states are to succeed in limiting the scope of a convention, they will most likely do so by presenting identical requests to Congress, in which they specify that the scope of the requested convention is to include only the specified subject(s), and in which they specify that the request presented is not to be considered as a request for, or counted among requests for, a convention of any broader scope. Again, though, because Congress has never been faced with the actual task of calling a constitutional convention, there has never been a determination of whether such an effort by the states would succeed. For this reason, the General Assembly would be well advised to weigh the various risks attendant to a request for a constitutional convention.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] One writer, addressing the Article V problems, stated: "The list of scholars who have wrestled with the conundrums posed by Article V's convention provisions reads like a Who's Who of constitutional law. . . ." Stokes, A General Theory of Article V: The Constitutional Lessons ofthe Twenty-Seventh Amendment, 103 YALE L.J. 677, 733 (1993). Stokes goes on to present, in a footnote that extends over two pages, a list of numerous eminent scholars who have written about Article V. Id.
[2] A helpful, succinct discussion of the issues that you have raised is set forth in American Bar Association Special Constitutional Convention Study Committee, Amendment of the Constitution by theConvention Method Under Article V (1974). This handbook is most likely available at any law library. However, it should be read in conjunction with the writings of other commentators on the subject of Article V, in light of the fact that some of those commentators' views conflict with the conclusions reached in the ABA study.
[3] See, e.g., Opinion of the Justices, 373 Mass. 877, 366 N.E.2d 1226
(1977). This decision is the only court decision that we have located in which the convention method of amending the U.S. Constitution has been discussed. In it, the court held that a convention request in the form of a joint resolution by the state legislature was appropriate.
[4] See Connelly, Amending the Constitution: Is This Any Way to Callfor a Constitutional Convention?, 22 ARIZ. L.R. 1011, 1032 (1980).
[5] See Connelly, supra, 22 ARIZ. L.R. at 1018-19.
[6] Connelly, supra, 22 ARIZ. L.R. at 1031.
[7] See discussion, R. CAPLAN, CONSTITUTIONAL BRINKSMANSHIP 99 (1988).
[8] See Connelly, supra, 22 ARIZ. L.R. at 1023.
[9] See, e.g., CAPLAN, supra, at 118.
[10] CAPLAN, supra, at 120.
[11] ABA Study, supra, at 34.
[12] See CAPLAN, supra, at 138 et seq.
[13] Id.
[14] U.S. Supreme Court Justice Scalia has indicated that such a risk might be worthwhile. American Enterprise Institute, A Constitutional Convention: How Well Would It Work? 22-23 (1979). Other commentators consider the risk far too dangerous to the fundamental law of the United States. See, e.g., CAPLAN, supra, at 146-47, citing remarks of Theodore Sorensen.